[Cite as *In re N.N.*, 2021-Ohio-3931.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE N.N.

A Minor Child

[Appeal by R.H., Mother]

:
:
:
:
:

No. 110443

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19-913035

---

### *Appearances:*

Valore & Gordillo, L.L.P., and Dean Valore, *for appellant.*

Anzelmo Law, and James A. Anzelmo, *for appellee.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant R.H. ("Mother") appeals the judgment of the Cuyahoga County Juvenile Court granting legal custody of her minor child, N.N., to the child's father, E.N. ("Father"). Mother argues that the decision of the juvenile court was not in the best interests of the child. After a thorough review of the law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} The Cuyahoga County Department of Child and Family Services ("CCDCFS" or "agency") obtained temporary custody of Mother's five minor children, Oi.J., M.P., K.P., J.H., and N.N.,[1] after M.P. was taken to the emergency room with a head injury and bloody nose, which Mother did not immediately address or explain. In its motion for temporary custody, the agency alleged that Mother had failed to address certain behaviors of Oi.J., M.P., and K.P., which presented a danger to themselves and to N.N. and J.H.

{¶ 3} In addition, Mother had been involved in multiple violent relationships resulting in violence witnessed by the children; and Mother had minimized the effects of this. Mother also had untreated PTSD, anxiety, and mood disorder for which she had been offered services yet declined to take advantage of them. The children had been noted to be unwashed and poorly clothed. Mother also lacked stable housing and was staying in a shelter. There were additional issues with the respective fathers of the children, in that one was incarcerated and the other two, one of which was Father, were involved in their children's lives but failed to support them financially.

{¶ 4} The agency developed a case plan for Mother that included domestic violence counseling, parenting classes, anger management classes, and a mental health assessment. Mother was further required to obtain stable housing.

---

[1] This appeal only relates to custody of N.N.

{¶ 5} N.N. was three years old at the time the agency intervened and was placed with Father. CCDCFS did not have any issues with Father and did not require him to complete a case plan.

{¶ 6} Father moved for legal custody of N.N. CCDCFS moved to terminate its custody of N.N. and for legal custody of N.N. to be awarded to Mother. The agency sought reunification of all of the children with Mother. With regard to N.N., CCDCFS requested shared parenting between Mother and Father with Mother as the residential parent.

{¶ 7} The court held a hearing on the motions. CCDCFS presented the testimony of the social worker assigned to the case, Rayshawn Eberhardt. Ms. Eberhardt testified as to the issues with Mother and the services recommended to her, noting that she had completed all of them. She further testified that there had been some visitation issues between Mother and Father, but that N.N. was spending a lot of time with Mother while Father was working. At one point prior to the hearing, N.N. stayed with Mother for an extended time because Father had tested positive for COVID-19. N.N. had remained with Mother after Father recovered and was still with Mother at the time of the hearing; Ms. Eberhardt stated that she did not know the reason for this. Ms. Eberhardt did acknowledge, though, that Mother and Father coparented N.N. and had "their own arrangements as far as how they parent their daughter."

{¶ 8} Ms. Eberhardt further testified that there was some discomfort between Father and the daycare that N.N. was attending, to the point where they did

not want to take N.N. anymore.  Again, though, Ms. Eberhardt stated that she did not know the reason for that.

{¶ 9} With regard to Father, Ms. Eberhardt stated that the agency did not have a case plan for him because they had "no concerns" with him.  The only issue with Father that Ms. Eberhardt mentioned was when Father withheld visitation from Mother for several weeks, but Ms. Eberhardt did not know the specific reason why — only that Father was angry about something.

{¶ 10} Ms. Eberhardt also stated that there were no issues with N.N. being with Father and that he has taken good care of her.  She noted that the only issue was that Father worked a lot, so N.N. was often with Mother or at daycare.

{¶ 11} Regarding Mother, Ms. Eberhardt testified that the agency had no issue with Mother obtaining custody of all five children and was not seeking protective supervision.

{¶ 12} The guardian ad litem for the children, Michael Murphy ("GAL"), testified that he believed that it was in "[N.N.'s] best interest if the parties could come up with a shared parenting plan with mom being custodial parent, even though I understand the concerns that [Father's counsel] has brought up regarding putting too much on mom at once."  The GAL went on to note some of the issues that the older children had been having, particularly with regard to school.  The GAL further stated that Mother has done everything that she needed to do under the case plan.  He emphasized that he would prefer to see Mother and Father work out shared parenting of N.N.

**{¶ 13}** At the conclusion of the hearing, the magistrate stated as follows:

I'm going to find that the Agency has made reasonable efforts towards reunification, however, I see no reason — I've heard nothing to dispute the fact that the child is doing well in father's custody. She has been in the father's custody, and there were no concerns or issues with the father from the outset of this case. And she's doing well in father's home. I see no reason to disrupt that.

She can have visitation with her siblings and her mother on a reasonable basis, but parents have an equal right to parent their child, both a mother and a father. And if the father is doing well and the child is doing well in father's care, I see no reason to disrupt that and move her.

I will say the parents are going to have to find a way to get along. She's three, I believe, so you have 15 years that you're going to have to find a way to get along with each and co-parent this child.

As to a shared parenting plan, that is a legal document that has to be filed with the Court. This Court can't order shared parenting on its own. If a shared parenting agreement had been proffered to the Court, that had been agreed upon by the parties, this Court would have gladly accepted it and adopted it. No one did that.

So at this time, I'll find the Agency has made reasonable efforts to finalize the permanency plan of reunification, however, at this time, I do believe it is in this child's best interest to deny the Agency's motion to grant legal custody to the mother, and grant legal custody to the father [E.N.]

And he has been maintaining that child with protective supervision without an issue, so I'm not going to order protective supervision of that child. It's legal custody to the father.

**{¶ 14}** Mother objected to the magistrate's decision awarding legal custody of N.N. to Father and denying the agency's motion for legal custody to her. The trial court overruled the objection and adopted the magistrate's decision. Mother then filed the instant appeal, raising one assignment of error for our review:

The trial court's finding it was in the best interests of N.N. to award legal custody of N.N. to E.N., father, is against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 15} In Mother's sole assignment of error, she argues that the trial court abused its discretion in awarding custody to Father when such an award was unsupported by evidence presented at the trial and when Mother had completed her case plan.

{¶ 16} Parents have a constitutionally protected interest in raising their children. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 15, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). That interest, however, is "'always subject to the ultimate welfare of the child.'" *Id.*, quoting *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 7.

{¶ 17} Under R.C. 2151.353(A)(3), the court may award legal custody of a child who has been adjudicated abused, neglected, or dependent, to any person who filed a motion requesting legal custody of the child prior to the dispositional hearing. Assuming the person seeking legal custody has complied with any statutory requirements, the court's authority to award legal custody under this statute "is limited only by the best interest of the child." *Id.*; *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 3. The best interest of the child is "of paramount concern" when making custody determinations. *In re M.J.M.* at ¶ 14.

{¶ 18} Legal custody is defined as follows:

[A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21); *In re E.A*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 11.

{¶ 19} Legal custody is significantly different than the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

{¶ 20} Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest in a motion for legal custody. *In re G.M.* at ¶ 15. We must presume that, in the absence of best interest factors in

a legal custody case, "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *Id.* at ¶ 16. Such factors, however, are instructive when making a determination as to the child's best interest. *In re E.A.* at ¶ 13.

{¶ 21} The best interest factors include, inter alia, the interaction of the child with the child's parents, relatives, and caregivers; the custodial history of the child; the child's need for a legally secure permanent placement; and whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home. R.C. 2151.414(D).

{¶ 22} Because custody determinations "'are some of the most difficult and agonizing decisions a trial judge must make,'" a trial judge must have broad discretion in considering all of the evidence. *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, at ¶ 10, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶ 23} An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if there is "'no sound reasoning process that would support that decision.'" *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 8, quoting *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made

"'without consideration of or regard for facts [or] circumstances.'" *In re C.D.Y.* at ¶ 8, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

{¶ 24} In the case at hand, Mother argues that the trial court's decision was an abuse of discretion because she had successfully completed her case plan. We are mindful that in making custody determinations, the trial court's principal concern is the children's best interest. While completing her case plan may be in Mother's best interest, this is not a factor in determining what is in the children's best interest. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 14. The successful completion of a case plan, "'is not dispositive on the issue of reunification.'" *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, at ¶ 19, quoting *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.).

{¶ 25} While Mother did complete her case plan, the GAL expressed other concerns with awarding custody to Mother. Several of the other children have some issues with regard to schooling that Mother had to address. While Mother has completed the case plan, she has not had the opportunity to show that she was able to care for all five children at once. The court recognized this and ordered protective supervision with regard to the other four children.

{¶ 26} Given the evidence presented at the hearing, we cannot say that the trial court's determination that it would be in the best interest of the child to be placed in the legal custody of Father was arbitrary or unreasonable. The record supports the trial court's findings by a preponderance of the evidence. N.N. had

been in Father's custody and by all accounts, Father was taking good care of her. The agency had not had any concerns about Father during the entire pendency of this case.

{¶ 27} Moreover, Mother's completion of her case plan was not dispositive of the issue of reunification. The record reflects that there was still a question as to whether Mother would be able to handle all five children at once, particularly given some of the needs of the older children. Given that N.N. was doing well under Father's care, the trial court opted not to disrupt her situation. This decision was not an abuse of discretion, and Mother's sole assignment of error is overruled.

### III. Conclusion

{¶ 28} The trial court's decision was supported by a preponderance of the evidence and was not against the manifest weight of the evidence. We therefore find that the trial court's award of legal custody to Father was in the best interest of the child and was not an abuse of discretion.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR