[Cite as *In re RY.T.*, 2023-Ohio-12.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE RY.T., ET AL., | : | |
| | : | No. 111311 |
| Minor Children | : | |
| | : | |
| [Appeal by L.A., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 5, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-20905138 and AD-20905139

---

### *Appearances:*

Brian A. Smith Law Firm, LLC, and Brian A. Smith,
*for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother"), L.A., appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that granted legal custody of her children Ry.T. (d.o.b. 1/14/13) and Ra.T. (d.o.b. 12/1/16) to their maternal great-grandmother, L.K. The complaint also addressed the

children's sibling, A.B. (d.o.b. 9/3/19), however, he is not part of this appeal. For the reasons set forth below, we affirm the award of legal custody to L.K.

**Procedural History and Factual History**

{¶ 2} On June 4, 2020, the Cuyahoga County Division of Children and Family Services (the "agency" or "CCDCFS") filed a complaint alleging that the children were abused and neglected and requesting the children be placed in the temporary custody of the agency. The agency simultaneously filed a motion requesting predispositional temporary custody of the children.

{¶ 3} The complaint alleged that on May 24, 2020, Mother was "violently attacked and significantly injured," by the father of A.B., A.B. Sr. As a result of this incident, Mother required hospital treatment and A.B. Sr. was charged with domestic violence and aggravated menacing in the Cleveland Municipal Court.

{¶ 4} The complaint also alleged that Mother lacked the judgment and decision-making skills needed to provide safe and adequate care for the children. This was evidenced by Mother's continued involvement with A.B. Sr. despite numerous prior incidents of violence, including a prior incident where Mother was seriously injured. Further, two of Mother's other children had previously been adjudicated and placed in the legal custody of a family member due to Mother's substance abuse issues. R.T., the father of Ry.T., was alleged to have failed to visit or communicate with his child on a consistent basis. Ra.T.'s father, John Doe, had failed to establish paternity and also failed to visit or communicate with his child.

{¶ 5} The juvenile court held the adjudicatory and dispositional hearings on September 1, 2020. After hearing testimony, the court amended the complaint to read that "Father of Ry.T., [R.T.] needs to consistently visit or communicate with his child." The court adjudicated both children as neglected and placed them in the temporary custody of the agency. The juvenile court approved the decision of the magistrate on September 20, 2020. The children who had resided with their maternal great grandmother, L.K., prior to the filing of the complaint, remained in her residence.

{¶ 6} The case plan called for mother to attend a domestic violence program or supportive group and/or individual counseling sessions; obtain appropriate and stable housing; obtain a mental health assessment; attend parenting classes; and address substance abuse concerns for marijuana and alcohol use.

{¶ 7} On April 23, 2021, the agency filed a motion for first extension of temporary custody. In the motion the agency alleged that Mother had not consistently participated in any case plan services. However, it noted that R.T. had housing and was employed. He also regularly visited with Ry.T. and Ra.T. R.T. had expressed a willingness to take custody of both children, but the agency alleged that he needed additional accommodations before he could take custody.

{¶ 8} The guardian ad litem, Ronald E. Falconi (the "GAL") filed a report on May 12, 2021. He noted that he had interviewed Mother, R.T., and the children. He reported that the children were doing well with L.K. Further, he acknowledged

the agency's report that Mother had made little progress on her case plan objectives, and agreed that permanency with R.T. was an appropriate goal given the circumstances.

{¶ 9} A hearing on the motion to extend temporary custody was held on May 18, 2021. At the hearing, Mother agreed to the extension. The juvenile court granted the motion effective June 3, 2021.

{¶ 10} On October 14, 2021, the agency filed a motion to modify temporary custody to legal custody to L.K. The agency alleged that the parents had failed to complete case plan objectives. Regarding Mother, the agency alleged that they had referred her to substance abuse treatment, mental health services, and domestic violence education but she had not complied with the services offered. Further, R.T. had not been compliant with services and could not provide a home for the children.

{¶ 11} The GAL filed reports on October 18 and November 8, 2021. In the October report, regarding A.B., the GAL reported that Mother had obtained a three-bedroom apartment and had maintained a job since March 21, 2021. He noted that her home was appropriate. Mother admitted to him that she recently tested positive for marijuana. In the November report, regarding Ry.T. and Ra.T., the GAL included additional information. The GAL noted that the case worker reported that Mother was not in compliance with her case plan objectives. Further, Mother had tested positive for cocaine, marijuana, and alcohol. The GAL recommended that the "status quo" remain, which at the time, consisted of L.K. raising the children.

{¶ 12} The juvenile court held hearings on the motion for legal custody on December 8 and December 20, 2021. These hearings were conducted by a magistrate. The magistrate granted the motion for legal custody to L.K. The magistrate found that although Mother had made some progress on the case plan, significant progress had not been made in alleviating the things that caused the removal of the children from the home. Specifically, the magistrate noted that Mother was referred to but did not complete parenting education. Mother had completed domestic violence services. Mother however had not completed anger management classes as of December 8, 2021. Mother was engaged in substance abuse counseling; however, she tested positive for marijuana and cocaine in May 2021; marijuana and alcohol in August 2021; and marijuana and alcohol again in October 2021. Mother also failed to complete a ten-day substance abuse program through Stella Maris.

{¶ 13} The magistrate further found that L.K. had executed a statement of understanding of legal custody and was an appropriate placement for the children.

{¶ 14} On December 27, 2021, Mother filed objections to the decision of the magistrate. Mother argued that the decision was against the manifest weight of the evidence and not in the best interest of the children. In the motion, Mother acknowledged that she had not completed all case plan objectives and had not obtained six months of sobriety, but argued that if the agency extended temporary custody, she would be able to complete the goals. Mother did not request the preparation of or submit a transcript of the proceedings to support her objections.

{¶ 15} On January 25 and 26, 2022, the juvenile court found the objections not well-taken and approved and adopted the decision of the magistrate.

{¶ 16} Mother appeals assigning the following error for our review.

### Assignment of Error

The trial court's ruling granting appellee's Motion to Modify Temporary Custody to Legal Custody was against the manifest weight of the evidence.

## Law and Analysis

{¶ 17} In her sole assignment of error, Mother argues that the juvenile court's decision was against the manifest weight of the evidence because legal custody was not proven to be in the best interest of the children. Therefore, she argues, the juvenile court abused its discretion. Specifically, Mother argues there was scant evidence to support granting legal custody to L.K. Further, Mother argues that the record established she had substantially complied with her case plan objectives and there was no need for a legally secure placement outside of her home. Consequently, the trial court erred when it determined that legal custody to L.K. was in the best interest of the children.

## Standard of Review

{¶ 18} The juvenile court has broad discretion in considering the evidence when making custody decisions because those determination are "'some of the most difficult and agonizing decisions a trial judge must make.'" *In re N.N.*, 8th Dist. Cuyahoga No. 110443, 2021-Ohio-3931, ¶ 22, citing *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, at ¶ 10, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415,

674 N.E.2d 1159 (1997). Accordingly, we review the juvenile court's decision granting legal custody for an abuse of discretion. *Id.*, citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). A court abuses its discretion when its attitude is "unreasonable, arbitrary, or unconscionable." *Id.* at ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 19} In the instant case, the juvenile court overruled Mother's objections to the decision of the magistrate and adopted the magistrate's decision as its own. Similarly, "[t]he decision to adopt, reject, or modify a magistrate's decision will not be reversed on appeal unless the decision amounts to an abuse of discretion." *In re S.H.*, 8th Dist. Cuyahoga No. 100911, 2014-Ohio-4476, ¶ 7.

{¶ 20} Our review is further limited because Mother did not provide a transcript to the juvenile court to support her objections. When a party seeks to object to a magistrate's factual findings, that party is "required to support the objection with the transcript of the evidence submitted to the magistrate relevant to that finding." *Id.*, citing Juv.R. 40(D)(3)(b)(iii) and *In re Maxwell*, 4th Dist. Ross No. 05CA2863, 2006-Ohio-527, ¶ 27, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 548 N.E.2d 287 (3d Dist.1988).

{¶ 21} This requirement addresses the Juv.R. 40 mandate that in considering objections to the decision of the magistrate, the juvenile court "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). This independent review is a "'de novo review of the facts

and an independent analysis of the issues'" allowing the juvenile court to "'reach its own conclusions about the issues in the case.'" *In re A.S.*, 8th Dist. Cuyahoga No. 101339, 2014-Ohio-4936, ¶ 5, quoting *Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, ¶ 13

{¶ 22} Where an objecting party fails to file a transcript, the juvenile court is required to "adopt the factual findings of the magistrate" and the juvenile court is limited to reviewing the magistrate's conclusions of law. *In re G.J.A.*, 8th Dist. Cuyahoga Nos. 107220 and 107575, 2019-Ohio-1768, ¶ 20, citing *Vannucci v. Schneider*, 8th Dist. Cuyahoga No. 104598, 2017-Ohio-192, at ¶ 17, citing *In re C.L.*, 8th Dist. Cuyahoga No. 93720, 2010-Ohio-682; *Allread v. Allread*, 2d Dist. Darke No. 2010 CA 6, 2011-Ohio-1271.

{¶ 23} Consequently, "'appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the [magistrate's decision]'" and "'the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record.'" *In re G.J.A.*, at ¶ 19, quoting *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 654 N.E.2d 1254 (1995).

**Manifest Weight of the Evidence**

{¶ 24} The failure to provide a transcript to the juvenile court, directly impacts our ability to address Mother's challenge to the manifest weight of the evidence. A custody decision will not be overturned as being against the manifest weight of the evidence if it is supported by competent, credible evidence. *In re D.G.B.*, 8th Dist. Cuyahoga No. 107921, 2019-Ohio-3571, ¶ 25 citing *In re S.D.*, 8th

Dist. Cuyahoga Nos. 99410, 99411, and 99412, 2013-Ohio-3535, ¶ 13, citing *In re B.M.*, 8th Dist. Cuyahoga No. 96214, 2011-Ohio-5176, ¶ 32.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12 (emphasis sic), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed. 1990) at 1594.

{¶ 25} When examining the manifest weight of the evidence, the appellate court

> "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Thompkins*, 78 Ohio St.3d. 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 26} However, because Mother did not provide the transcript to the juvenile court, we cannot review it either. *Trimble v. Rossi*, 8th Dist. Cuyahoga No. 108683, 2020-Ohio-3801, ¶ 25 (addressing Civ.R. 53 which contains the same language as Juv.R. 40). "'Appellate review is limited to the record as it existed at the time the trial court rendered its judgment.'" *Id.* quoting *Franks v. Rankin*, 10th Dist. Franklin No. 11AP-962, 2012-Ohio-1920, ¶ 73, citing *Wiltz v. Clark Schaefer*

*Hackett & Co.*, 10th Dist. Franklin Nos. 11AP-64 and 11AP-282, 2011-Ohio-5616; *Wallace v. Mantych Metalworking*, 189 Ohio App.3d 25, 2010-Ohio-3765, 937 N.E.2d 177, ¶ 10 (2d Dist.).

{¶ 27} As we have already discussed, failure to provide a transcript to the trial court, waives any objection to the magistrate's findings of fact. *In re Estate of Jenkins*, 8th Dist. Cuyahoga No. 107343, 2019-Ohio-2112, ¶ 38 (also addressing Civ.R. 53), citing *In re A.L.*, 8th Dist. Cuyahoga No. 99040, 2013-Ohio-5120, ¶ 11, citing *Ramsey v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674, ¶ 23. *See also In re G.J.A.*, 2019-Ohio-1768, at ¶ 20.

{¶ 28} We therefore cannot weigh the evidence, but are limited to determining whether the trial court abused its discretion by approving the decision of the magistrate. *In re G.J.A.* at ¶ 20. Specifically, we are tasked with determining whether the juvenile court correctly applied the law to the magistrate's findings of fact.

{¶ 29} Under R.C. 2151.353, the juvenile court may award legal custody of a child who has been adjudicated abused, neglected, or dependent to any person who files a motion, or who is identified as a proposed legal custodian in a complaint or motion requesting legal custody of the child prior to the dispositional hearing. R.C. 2151.353(A)(3). Additionally, the legal custodian must comply with statutory requirements, including signing a statement of understanding that delineates the rights and responsibilities associated with legal custody. R.C. 2151.353(A)(3)(a)-(d).

{¶ 30} Finally, in addition to the statutory requirements, the juvenile court must determine whether granting legal custody is in the best interest of the child by a preponderance of the evidence. *In re A.W.*, 8th Dist. Cuyahoga No. 109003, 2020-Ohio-3461, ¶ 22. "A 'preponderance of the evidence' means evidence that is "'more probable, more persuasive, or of greater value.'" *Id.*, citing *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52. R.C. 2151.353(A)(3) however does not provide factors that the court must consider to determine the best interest of the child in legal custody matters. *Id.*, at ¶ 23. This court has routinely looked to the best interest factors delineated for permanent custody cases as a guide to determining the issue in legal custody matters. *Id.*, citing *In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818 ¶ 20, citing *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13.

{¶ 31} The best interest factors include, a) the relationship of the child with their parents, siblings, relatives, and out-of-home providers; b) the child's wishes, expressed directly or through the GAL; c) the custodial history of the child, e.g., whether the child is in temporary custody, and for how long; d) the child's need for a legally secure placement; and e) whether any of the factors included in R.C. 2151.414(E)(7) to (11) applies. R.C. 2151.414(D)(1)(a) through (e).

{¶ 32} In the instant case, the juvenile court found that L.K. was present at the hearing and had executed the required statement of understanding of legal custody. The court found that Mother had made progress on the case plan, but not

significantly enough to alleviate the cause of the children's removal from the home. The court found that the children's "continued residence in or return to the home of L.A., Mother, at this time, will be contrary to the [children's] best interest." The court made the following factual findings:

> Mother's case plan objective[s] were parenting education, mental health, substance abuse, domestic violence education, anger management and housing. She was referred to Moore Counseling for parenting education. Mother went to Able Counseling in October 2021, which was not completed. Mother was referred to Moore Counseling and then Able Counseling for domestic violence services which were completed November 2021. Mother was referred to Moore Counseling and then Able Counseling for anger management. No progress was made as of December 8, 2021. Mother was referred to Moore Counseling and then Stella Maris for substance abuse. She is engaged in counseling but tested positive for alcohol and marijuana. She was referred to a high level of care at Stella Maris to start services, but never completed. This was a ten-day program. She was discharged November 10, 2021. Mother tested positive in May 2021 for marijuana and cocaine. On October 4, 2021, she tested positive for marijuana and alcohol. On August 17, 2021, she tested positive for marijuana and alcohol. Mother does have a medical marijuana card. * * * Visitation between Mother and child are going well with no issues.

{¶ 33} Based on the foregoing, the trial court did not abuse its discretion when it overruled Mother's objections and approved the decision of the magistrate granting legal custody to L.K.

{¶ 34} Accordingly, the assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, A.J., and
LISA B. FORBES, J., CONCUR