[Cite as *In re C.V.M.*, 2012-Ohio-5514.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.   98340

---

## IN RE: C.V.M., JR.

## A Minor Child

## [APPEAL BY FATHER]

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No.   AD 03902263

**BEFORE:**   Keough, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   November 29, 2012

**ATTORNEY FOR APPELLANT**

Mark S. O'Brien
Heights Medical Center Building
2460 Fairmount Blvd.
Suite 301B
Cleveland Heights, OH 44106


**FOR APPELLEES**

Michael B. Granito
24400 Highland Road
Suite 162
Richmond Hts., Ohio 44143

A.W., pro se
4822 Walford Road
Apt. 209
Warrensville Hts., Ohio 44128

L.M., pro se
4889 Banbury Court #2
Warrensville Heights, OH 44128

KATHLEEN ANN KEOUGH, J.:

{¶1} Father-appellant appeals from the trial court's decision awarding legal custody of his son, C.V.M., to appellee, a nonparent. For the reasons that follow, we reverse and remand for the trial court to apply the correct legal standard of parental unsuitability to the facts and evidence contained in the trial court record.

{¶2} Appellant is the natural father of C.V.M., who was born in 2003. In 2004, the juvenile court granted custody of C.V.M. to father and his wife, who is not C.V.M.'s biological mother. Both father and wife acted as parents to the child. In 2010, wife filed for divorce against father. In May 2010, father filed a motion with the juvenile court for sole legal custody of C.V.M.; however, wife (hereinafter referred to as "custodian") obtained physical custody of the child. In August 2010, custodian was granted temporary custody of the child and was granted a divorce from father. Thereafter, a myriad of contentious motions were filed, and allegations were made by the parties against each other. Ultimately, motions were filed by custodian for sole legal custody of C.V.M. and by father for modification of the temporary custody order.

{¶3} The trial court held a hearing on all pending motions, including the motions affecting the sole legal custody of C.V.M. The crux of the hearing was to determine who would be the child's legal custodian. The trial court took testimony from father, custodian, C.V.M.'s guardian ad litem, C.V.M.'s birth mother, and five character witnesses called on behalf of father. Following the hearing, the trial court issued a

judgment entry and written opinion granting legal custody to the custodian after finding that an award of custody to father would be detrimental to the child.

{¶4} Father appeals raising two assignments of error, both challenging the trial court's decision granting custody to the nonparent. In his first assignment of error, father argues that the trial court abused its discretion in determining that he was an unsuitable parent. In his second assignment of error, he argues that his constitutional rights were violated and the trial court abused its discretion by not applying a clear and convincing evidentiary standard. We will discuss these assignments of error together.

{¶5} A trial court enjoys broad discretion in custody proceedings because "custody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. A trial court's custody determination will not be disturbed unless the court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶6} While the trial court has discretion in custody proceedings, the record must contain sufficient factual evidence to support the court's findings. *In re Schwendeman*, 4th Dist. Nos. 05CA18, 05CA25, 2006-Ohio-636, ¶ 19; *Beekman v. Beekman*, 96 Ohio App.3d 783, 787, 645 N.E.2d 1332 (4th Dist. 1994). We will not reverse a judgment as

being against the manifest weight of the evidence when the record contains some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact. *Myers v. Garson*, 66 Ohio St.3d 610, 614, 1993-Ohio-9, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id*. at 80.

{¶7} Because legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody, the trial court's standard of review in a legal custody proceeding is not clear and convincing evidence as in permanent custody proceedings, but merely preponderance of the evidence. *In re D.P.*, 10th Dist. No. 05AP-117, 2005-Ohio-5097, ¶ 52 (citations omitted). "Preponderance of the evidence" means "evidence that's more probable, more persuasive, or of greater probative value." *Id*., quoting *State v. Finkes*, 10th Dist. No. 01AP-310, 2002-Ohio-1439.

{¶8} In a child custody proceeding between a parent and nonparent, not arising from an abuse, neglect or dependency determination, a court may not award custody to the nonparent

> without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent

abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.

*In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus; *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 17.

{¶9} In this case, the trial court found by a preponderance of the evidence that "the award of the child's custody to the father would be detrimental to the child." Although the trial court did not use the exact wording that father was "unsuitable," we conclude that the use of the term "detrimental," by definition, evidences that the trial court was making a finding of parental unsuitability.

{¶10} The "suitability" test is different from the "best interest" test. A pure "best interest" test looks totally to the best situation available to the child and places the child in that situation. *Thrasher v. Thrasher*, 3 Ohio App.3d 210, 213, 444 N.E.2d 431 (9th Dist.1981). The *Perales* test, however, requires that some detriment to the child be shown before he is taken away from an otherwise suitable parent. *Id*. Unsuitability does not necessarily connote some moral or character weakness. *Perales* at 99. Simply because one situation or environment is the "better" situation does not mean the other is detrimental or harmful to the child. *In re Porter*, 113 Ohio App.3d 580, 589, 681 N.E.2d 954 (3d Dist.1996). Moreover, while the welfare of the child is a primary consideration, the right of parents to raise their own child is an essential and basic civil right; natural parents have a paramount right, as against third parties, to custody of their children. *In*

*re Pryor*, 86 Ohio App.3d 327, 334, 620 N.E.2d 973 (4th Dist. 1993); *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990).

{¶11} In this case, the trial court stated it relied on *Perales*; however, the trial court's judgment reflects that it engaged solely in a best interest analysis, which is contrary to *Perales* and the duty placed on the court. The trial court's opinion engages in a comparison analysis between father and custodian. This comparison is inappropriate under a suitability test. The duty placed before the juvenile court is whether father is unsuitable; that is, whether custody with father would be detrimental to the child.

{¶12} Although there is no bright-line test or standard of what is detrimental to the child, Ohio case law demonstrates that where courts found an award of custody to a parent detrimental, the court found serious problems with the unsuitable parent. *See, e.g. In re Medure*, 7th Dist. No. 01 CO 03, 2002-Ohio-5035 (children distrusted the parent; parent verbally and physically abused the children, including hitting them with ropes; parent did not keep adequate supplies of food at home); *In re Adams*, 9th Dist. No. 01CA0026, 2001-Ohio-1652 (parent was incarcerated for three months after child was born; parent was currently on probation in two counties; parent had disorderly conduct charges pending against him; parent had not paid child support for some time; parent had failed to use a car seat when transporting child; parent was unable to secure a stable home or lasting employment); *Slivka v. Sealock*, 5th Dist. No. 00-CA-13, 2001 Ohio App. LEXIS 2408 (May 18, 2001) (parent had history of psychological and behavioral

problems; parent's husband had domestic violence conviction); *see also Reynolds v. Ross Cty. Children's Servs. Agency*, 5 Ohio St.3d 27, 448 N.E.2d 816 (1983); *In re Z.A.P.*, 177 Ohio App.3d 217, 2008-Ohio-3701, 894 N.E.2d 342 (4th Dist.); *In re A.W.G.*, 12th Dist. No. CA2003-04-099, 2004-Ohio-2298; *Karr v. Dunn*, 4th Dist. No. 03CA22, 2004-Ohio-928.

{¶13} Moreover, the obvious transitional issues of moving from one home to another (i.e. change of home, school, community, friends) is not the type of detriment contemplated by *Perale*s that would make a parent unsuitable in the context of a custody dispute between a natural parent and a nonparent. *In re Davis*, 11th Dist. No. 02-CA-95, 2003-Ohio-809, ¶ 27-28. In *Davis*, the court found that merely because the child would have a period of adjustment if the child moved from her current residence with the nonparent to her father's residence, did not mean that it was detrimental for her to be raised by her father. *Id.* at ¶ 29.

{¶14} We find persuasive the holding and disposition of the Seventh District in *In re Lowe*, 7th Dist. No. 00 CO 62, 2002-Ohio-440, where the court was confronted with a similar situation in which the trial court applied the best interest test rather than the suitability test in a custody determination between a parent and nonparent. In *Lowe*, the court noted that comparison of the parent's and the nonparent's residences is not appropriate in a suitability test. *Id.* at *7, citing *Porter* at 589. Additionally, the court held that "in determining the suitability of a parent, the guardian ad litem testimony as to

the pure best interests of the child cannot be used." *Id*., citing *Porter*. In light of these errors and misapplication of the appropriate test, the court reversed the judgment of the trial court, ordered a new hearing, and ordered the trial court to apply the suitability test to determine custody of the child. *Id*. at *8.

{¶15} As previously determined, the trial court in this case conducted a "compare and contrast" analysis between the father and custodian. The focus in a suitability test, however, should be the parent, not the nonparent. Only after a finding of parental unsuitability, should the court then engage in a best-interest test to determine if custody to the nonparent is in the child's best interests. In this case, however, the trial court only engaged in a best-interest analysis. This was clearly improper.

{¶16} Accordingly, we find that the trial court incorrectly applied the suitability test to the facts of this case. Therefore, the trial court's decision awarding custody to the nonparent is reversed and the case is remanded for the trial court to apply the correct legal standard of parental unsuitability to the facts and evidence contained in the trial court record.

{¶17} Judgment reversed and remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cuyahoga County Court of Common Pleas, Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
KENNETH A. ROCCO, J., CONCUR