[Cite as *In re H.J.H.*, 2019-Ohio-116.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: H.J.H.            :         APPEAL NO. C-180019
                                      TRIAL NO. F13-1252

                              :           *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed, Judgment Entered, and Cause Remanded

Date of Judgment Entry on Appeal: January 16, 2019

*Stagnaro Hannigan Koop, L.P.A.,* and *Michaela Stagnaro,* for Appellant-Father,

*Heyman Law LLC* and *D. Andrew Heyman,* for Appellees-Grandparents.

ZAYAS, Presiding Judge.

### Background

{¶1}    Father appeals the judgment of the Hamilton County Juvenile Court awarding custody of his daughter, H.J.H., to her maternal grandparents. We hold that the trial court abused its discretion by finding father unsuitable. Because the record before us does not establish father is unsuitable, we reverse the trial judge's decision and enter judgment awarding custody to father.

{¶2}    Mother and father both had substance abuse problems when H.J.H. was born. As a result, H.J.H. lived with her grandparents. Legal custody remained with mother although she continued to struggle with addiction. Father engaged in treatment for his addiction and testified that he stopped abusing heroin in November of 2014. Father also paid child support and exercised visitation. Father filed a motion for custody of H.J.H. in October of 2016. Approximately six months later, grandparents filed a motion for custody of H.J.H. A guardian ad litem ("GAL") was appointed to help the court determine what custody arrangement would be in H.J.H.'s best interests. Instead, the GAL determined that father was unsuitable and that it would be in H.J.H.'s best interests for grandparents to be H.J.H.'s legal custodians. After a hearing, the magistrate determined that father was not unsuitable and awarded custody to father. Grandparents filed objections to the magistrate's decision, which were sustained by the trial judge who, without further testimony, awarded custody to grandparents. Father, in his single assignment of error, argues that the trial court erred as a matter of law by awarding custody of H.J.H. to her maternal grandparents. Father argues that there is not enough evidence in the record for the trial court to have found him unsuitable.

{¶3} Natural parents have a paramount right to the custody of their children, and this paramount right cannot be denied unless a preponderance of the evidence indicates that the parent is unsuitable. *In re Perales,* 52 Ohio St.2d 89, 98, 369 N.E.2d 1047 (1977); *In re Harper*, 1st Dist. Hamilton No. C-800045, 1981 WL 9599, *3 (Feb. 4, 1981). We review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. An abuse of discretion is more than an error of law or judgment; it is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A trial court's decision that is not supported by competent, credible, evidence is unreasonable and may be reversed. *In re Wilkenson,* 1st Dist. Hamilton Nos. C-010402 and C-010408, 2001 WL 1220026, *1 (Oct. 12, 2001); *In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 10; *In re Patterson*, 1st Dist. Hamilton No. C-090311, 2010-Ohio- 766, ¶ 15 and 20. *See Bechtol v. Bechtol,* 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus (where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court).

{¶4} Only if the trial court determines that the parent is unsuitable, should it then examine which custodial placement would be in the best interest of the child. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 15; *O'Connor v. Stires*, 12th Dist. Fayette No. CA2017-04-008, 2017-Ohio-8929, ¶ 22.

### *Determination of Unsuitability*

{¶5} Unsuitability of a parent is established if the parent has abandoned the child, or the parent has contractually relinquished the child, or the parent has become totally incapable of supporting or caring for the child, or if an award of

custody would be detrimental to the child. *Perales* at 98. "Biological parents have a fundamental liberty interest in the care, custody, and management of their children and a finding of parental unsuitability is not to be made lightly." *In re Z.P.*, 2017-Ohio-7397, 96 N.E.3d 1115, ¶ 31 (8th Dist.).

{¶6}   The only issue before the magistrate and the trial judge was whether father was unsuitable because an award of custody to him would be detrimental to H.J.H.

### *Detrimental to the Child*

{¶7}   While an award of custody may have a detrimental effect on a child, a child being moved from her home, by itself, is not the sort of detriment that rises to the level of rendering a parent unsuitable. *In re Davis,* 7th Dist. Mahoning No. 02-CA-95, 2003-Ohio-809, ¶ 28. Courts have found detriment to the child in cases where a parent has exposed the child to verbal and physical abuse, where the child is in a chaotic environment filled with domestic violence, and where the child has animosity toward the parent which causes mental and physical problems. *In re M.B.,* 9th Dist. Summit No. 26004, 2012-Ohio-687 (child exposed to verbal and physical abuse due to parents arguing and fighting); *In re D.D.*, 2017-Ohio-8392, 100 N.E.3d 141 (7th Dist.) (child experienced physical manifestations of anxiety when faced with visiting with father).

{¶8}   Here, the record demonstrates that father had a stable home and was living with his girlfriend and her children. They had lived in an apartment for seven months but had recently moved into a larger apartment to better accommodate H.J.H. and the child he and his girlfriend were going to have. Father had stopped using heroin almost three years prior to the hearing and had stable employment. Although father had been charged with a DUI two years before the hearing, he had

4

stopped drinking regularly. He also had found a daycare to care for H.J.H. while he was at work.

{¶9} The GAL's report indicates that the focus of the GAL was to provide a recommendation to assist the court with determining H.J.H.'s best interests, yet he found father unsuitable. The GAL was "concern[ed] because [father] wants to uproot [H.J.H.] from her life and support system in Colerain and move her to Northern Kentucky where she is unfamiliar [sic]." He also noted that father had not been to doctor's appointments, although testimony from father and grandmother indicated that grandmother had not permitted him to take H.J.H. to the doctor.

{¶10} The GAL also opined that father's support system would be weak if father needed help, and was concerned that father's name was not on the lease to his apartment in the event that he and his girlfriend broke up. Although father had worked full time for the last year, the GAL was worried about father and his girlfriend's finances once their baby was born. The GAL also believed that father had "not built enough of a record to prove stability and fitness in this case," but the burden was on the grandparents to prove unsuitability, not on father. *In re Z.P.*, 2017-Ohio-7397, 96 N.E.3d 1115, at ¶ 35.

{¶11} The trial court, while determining unsuitability, noted that the grandparents "have provided exceptional care for [H.J.H.] over the last four and one half years, and she is thriving in their home." He found that the grandparents "prioritized the child's safety and well-being" and that they "maintain a stable home environment." He also noted that grandparents have a three-bedroom home, spend time with and vacation with H.J.H.'s cousins, and deposit father's child-support payments into an account set up for H.J.H.

{¶12} In evaluating father's suitability, the court relied on the GAL's recommendation, and was concerned about father's employment and relationship stability, and that only his girlfriend's name was on the lease to their apartment. A suitability determination, however, is based on father's current situation, not what might occur at some time in the future. *See In re Davis,* 7th Dist. Mahoning No. 02-CA-95, 2003-Ohio-809, at ¶ 19;

{¶13} The court then held that awarding custody to father would be detrimental to H.J.H. These findings and comparisons between father and grandparents, however, are based on a best-interest evaluation. Grandparents may have a larger home, longer term employment, and live close to other family members, but that does not render father unsuitable. "Simply because one situation or environment is the 'better' situation does not mean that the other is detrimental or harmful to the child." *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, at ¶10; *In re Porter*, 113 Ohio App.3d 580, 589, 681 N.E.2d 954 (3d Dist.1996).

{¶14} A best-interest test looks at the "best" situation available and places the child there, but a suitability test requires a detriment to the child. *Id.*; *In re D.D.*, 2017-Ohio-8392, 100 N.E.3d 141. A comparison between third parties and parents is inappropriate because parents have a paramount right to custody of their children and parental custody is presumed to be in the best interest of the child unless that placement would be detrimental. *Perales,* 52 Ohio St.2d at 97, 369 N.E.2d 1047; *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990).

{¶15} While the court found that, under a best-interest test, custody of H.J.H. should be awarded to grandparents, a preponderance of the evidence did not show that father was unsuitable. The record shows that, at the time of the magistrate's hearing, father had a suspended driver's license and the suspension

would continue for two more weeks, he sometimes drove outside his driving privileges, and he occasionally drove with H.J.H. in the front seat of his car when driving to the pool or the dumpster of his apartment complex.

{¶16} Based on the evidence, the trial court abused its discretion in awarding custody to grandparents. The trial court's decision was based on findings about grandparent's care that are not relevant to father's suitability. Its judgment determining that an award of custody would be detrimental to H.J.H. and that father is unsuitable is not supported by sufficient competent and credible evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. Father's assignment of error is sustained.

{¶17} We reverse the trial court's judgment, enter judgment awarding custody of H.J.H. to father, and remand this cause to the trial court to set a visitation schedule for grandparents. *See* App.R. 12(C).

Judgment accordingly.

**MYERS J.,** concurs.
**MILLER, J.,** concurs in part and dissents in part.

I write separately because while I agree with the majority that the judgment should be reversed, I disagree with the disposition. I would not enter judgment in favor of father, but would remand the case to the trial court so that it can determine father's suitability using the appropriate criteria.

Please note:

This court has recorded its own entry on the date of the release of this opinion.

7