[Cite as *In re S.P.*, 2022-Ohio-1656.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| IN RE: S.P. & A.P. | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J.<br>Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J.<br><br>Case Nos. 2021 CA 00086 &<br>2021 CA 00087<br><br><br>O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Richland County Court of Common Pleas, Juvenile Division, Case Nos. 2019 DEP00157 & 2019 DEP00158 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 18, 2022 |
| APPEARANCES: | |


| | |
|---|---|
| For Plaintiff-Appellee | For Mother-Appellant |
| SARAH EE MUSSMAN<br>Richland County Children Services<br>731 Scholl Road<br>Mansfield, Ohio 44907 | JAMES L. BLUNT, II<br>3954 Industrial Parkway<br>Shelby, Ohio 44875 |
| Guardian Ad Litem | |
| DARIN AVERY<br>105 Surges Avenue<br>Mansfield, Ohio 44903 | |

*Hoffman, J.*

{¶1}   In Richland App. Nos. 2021-CA-00086 and 2021-CA-00087, appellant Sarah Burkes ("Mother") appeals the November 12, 2021 Judgment Entry entered by the Richland County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's August 2, 2021 amended decision, approved and adopted said decision as order of the court, and placed her two minor children ("Child 1" and "Child 2", individually; "the Children", collectively) in the legal custody of their paternal grandmother, Yolanda Price ("Grandmother").   Appellee is Richland County Children Services Board ("RCCS").

STATEMENT OF THE CASE AND FACTS

{¶2}   Mother and Roy Price, III ("Father") are the biological parents of the Children.[1]   Mother and Father were never married.   On July 19, 2019, RCCS filed complaints, alleging the Children were dependent and neglected.   The Complaints were filed after concerns of neglect were reported to RCCS because Mother was going to jail and did not have anyone to care for the Children.   RCCS also had concerns about Mother's current and past substance abuse and mental health issues.   On the same day, RCCS filed a motion for temporary order of temporary custody, requesting the trial court award temporary custody of the Children to Grandmother.

{¶3}   The magistrate issued temporary orders on July 31, 2019, placing the Children in the temporary custody of Grandmother.   The magistrate conducted an initial hearing on the complaints on July 31, 2019.   Mother entered a denial to the allegations set forth in the complaints as such related to her.   Service on Father had not yet been

---

[1] Father is not a party to these Appeals.

perfected. The trial court appointed Attorney Darin Avery as guardian ad litem ("GAL") for the Children on August 9, 2019.

**{¶4}** The magistrate conducted a pre-trial conference relative to Mother and an initial hearing relative to Father on August 21, 2019. Mother maintained her previous denial to the allegations set forth in the complaints. Father entered a denial to the allegations set forth in the complaints as such related to him.

**{¶5}** Following an adjudicatory hearing on September 9, 2019, Mother stipulated to a finding of dependency as to both Child 1 and Child 2 and agreed to an initial disposition of temporary custody to Grandmother. RCCS withdrew the allegations of neglect. Father did not appear at the hearing. Mother's stipulation and agreement to an initial disposition of temporary custody were memorialized via Amended Magistrate's Decisions filed October 3, 2019. The GAL filed his report on October 14, 2019, recommending temporary custody of the Children be awarded to Grandmother. The magistrate conducted the dispositional hearing on October 15, 2019. Father did not appear at the hearing.

**{¶6}** Via Decisions filed November 5, 2019, the magistrate found Child 1 and Child 2 to be dependent and placed the Children in the temporary custody of Grandmother with an order of protective supervision to RCCS. The trial court approved and adopted the magistrate's decisions via Judgment Entries filed November 5, 2019. The trial court approved the October 30, 2019 proposed case plan on November 7, 2019, and an amendment to the proposed case plan on November 20, 2019.

**{¶7}** The magistrate conducted a 90-day review hearing on January 10, 2020, and maintained the status quo. Due to the Covid-19 pandemic, the April 15, 2020 90-day

review hearing was cancelled. RCCS filed motions for disposition on May 29, 2020, moving the court to extend temporary custody to Grandmother. The magistrate conducted an annual review hearing and a hearing on RCCS's motions for disposition on July 13, 2020. Via Decisions filed July 27, 2020, the magistrate granted RCCS's motions, extended temporary custody to Grandmother, and extended the order of protective supervision to RCCS. With leave from the court after orally recommending an extension of temporary custody at the July 13, 2020 hearing, the GAL filed his second report on July 29, 2020. The trial court approved and adopted the magistrate's decisions on July 27, 2020.

{¶8} On December 22, 2020, RCCS filed motions for disposition, requesting a dispositional hearing to terminate the orders of temporary custody and orders of protective supervision, and to grant legal custody of the Children to Grandmother. Grandmother executed a Statement of Understanding pursuant to R.C. 2151.353(A)(3) for Child 1 and Child 2.

{¶9} The magistrate conducted a semi-annual review hearing on January 6, 2021, and maintained the status quo pending resolution of RCCS's motions for disposition. On March 29, 2021, Mother filed motions requesting a 6-month extension to work on case plan compliance prior to the court issuing final dispositional orders. The GAL filed a report on July 9, 2021, recommending Grandmother be awarded legal custody of the Children. On July 14, 2021, the magistrate conducted a hearing on RCCS's motions for disposition and Mother's motions for a six-month extension of temporary custody. Father was not present at the hearing due to his current incarceration, but gave his attorney authority to agree to RCCS's motions for disposition.

{¶10} Mother testified as if on cross-examination. At the time of the hearing, Mother was incarcerated at the Richland County Jail, facing charges for assault, criminal damaging, and intoxication. She had been in jail approximately two weeks at the time of the hearing. Mother stated she is on probation for domestic violence; therefore, will be charged with a probation violation. Mother indicated she completed a drug and alcohol treatment program two weeks prior to her current incarceration. Mother explained she became intoxicated on the day of her arrest because she could not face losing the Children and did not mean for her drinking to get out of hand. Tr. at 12. Mother maintained she had maintained her sobriety for two years prior to the recent incident, but, when confronted, conceded it had only been a period of one year.

{¶11} Mother did not have any concerns with Grandmother's ability to care for the Children, but added Grandmother could not love them as much as she could. Mother agreed her relationship with Grandmother would allow her to maintain a relationship with the Children. Mother acknowledged she was not in a position to be able to reunify with the Children.

{¶12} Dan Myers, a Richland County Adult Probation Officer, testified he has been Mother's probation supervisor since August 24, 2020. Until Mother's recent arrest, she had only had minor violations of the terms of her probation. Myers filed a probation violation following Mother's arrest and she was being held in jail on a $50,000 bond. Myers stated he intended to recommend a 30-day drug and alcohol treatment program as the sentence on the probation violation. Myers added Mother has not consistently engaged in treatment, which he noted was vital to help her cognitive thinking as she could be "a hot head." Tr. at 36.

{¶13} Grandmother testified the Children have been in her home since April, 2019. Grandmother stated she is in a position to take legal custody of the Children and understood the permanent nature of such. Grandmother indicated a willingness to honor Mother's parental rights. She added she has the financial means to care for the Children.

{¶14} Grandmother described her relationship with Mother as "pretty good." Tr. at 50. Grandmother believed she and Mother would be able to work out contact, communication, and visitation going forward. Grandmother explained Child 1 has ADD ("attention deficit disorder") and has an IEP ("individual education plan") at school. Child 1 also receives occupational therapy on a weekly basis. Child 2 does not have special needs. Grandmother explained, if the Children were returned to Mother, her greatest concerns would be Mother's financial stability and mental health stability.

{¶15} The magistrate questioned Grandmother. Grandmother stated she is bonded with the Children and they are bonded with her. She expressed her love for the Children and their love for her, but acknowledged the Children miss Mother and Father. The Children know they are safe and their needs and wants are met. Grandmother noted she does not have any concerns about her ability to continue to coordinate visits with Mother. She added if Mother was acting inappropriately, she would not let the Children around Mother.

{¶16} Shawn Strong, the RCCS ongoing caseworker assigned to the family, testified RCCS filed the motion for legal custody due to Mother's "mental health and ongoing issues * * * overall mental health." Tr. at 86. Strong stated Mother's case plan required her to engage in substance abuse treatment, to participate in mental health services, and to be able provide for the Children's basic needs. Strong did not believe

Mother had successfully remedied the conditions which led to the Children's removal. He explained Mother continued to use alcohol and, over the life of the case, had had incidents of domestic violence and beating up people when she drinks. With regard to Mother's ability to meet the Children's basic needs, Strong indicated Mother had housing through METRO (Metropolitan Housing Authority) and was working as a housecleaner. Strong added Mother was struggling financially, but was trying. Mother did not engage in case plan services during the first year of the case. After being placed on probation in August, 2020, Mother engaged in mental health counseling through teletherapy, and drug and alcohol treatment.

{¶17} Strong believed it was in the Children's best interest to place them in the legal custody of Grandmother. He explained, although the Children love Mother and are bonded with her and Mother with them, Mother is not able to provide and care for the Children 24 hours/day, 7 days/week. Grandmother is meeting the Children's needs. Grandmother is able to take the Children to their appointments. Grandmother has significant family support and is working with community agencies to obtain any necessary services for the Children. Strong was confident Grandmother would keep the Children safe from Mother and Father, should any issues arise. Grandmother facilitates visits between Mother and the Children.

{¶18} Strong concluded Mother would not be in a position to adequately meet the Children's needs and have her drug and alcohol, and mental health issues under control within the next three to six months. Strong also stated granting legal custody to Grandmother would be in the Children's best interest.

**{¶19}** The magistrate issued his decisions on July 28, 2021, placing the Children in the legal custody of Grandmother. The magistrate found RCCS made reasonable efforts to reunify the Children with Mother. The magistrate further found it was in the Children's best interest to be placed in the legal custody of Grandmother. Mother filed timely objections to the magistrate's decisions. On October 12, 2021, Mother filed supplemental objections. RCCS did not file a response to either Mother's objections or supplemental objections. Via Judgment Entries filed November 12, 2021, the trial court overruled Mother's objections, and approved and adopted the magistrate's decision as order of the court.

**{¶20}** It is from these judgment entries Mother appeals.

**{¶21}** In Richland App. No. 2021-CA-00086, Mother raises the following assignments of error:

I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT APPELLANT FAILED TO [SIC] SIGNIFICANT PROGRESS ON THE CASE PLAN TO AMELIORATE THE ISSUES WHICH CAUSED THE CHILDREN TO BE REMOVED.

II. WHETHER THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO A GRANDPARENT.

**{¶22}** In Richland App. No. 2021-CA-00087, Mother assigns the following as error:

I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT APPELLANT FAILED TO [SIC] SIGNIFICANT PROGRESS ON THE CASE PLAN TO AMELIORATE THE ISSUES WHICH CAUSED THE CHILDREN TO BE REMOVED.

II. WHETHER RICHLAND COUNTY CHILDREN SERVICES ENGAGED REASONABLE EFFORTS TO REUNITE THE CHILDREN WITH A PARENT.

III. WHETHER THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO A GRANDPARENT.

Richland App. No. 2021-CA-86

II

Richland App. No. 2021-CA-87

III

**{¶23}** For ease of discussion, we elect to address Mother's second assignment of error in Richland App. No. 2021-CA-86 and third assignment of error in Richland App. No. 2021-CA-87 first.  In these assignments of error, Mother maintains the trial court erred in granting legal custody of the Children to Grandmother.  We disagree.

**{¶24}** R.C. 2151.353(A) provides, in pertinent part:

> (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
>
> * * *
>
> (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

**{¶25}** Legal custody is significantly different from the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.,* 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.,* 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

**{¶26}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree a juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e).

**{¶27}** "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. Accordingly, we review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, ¶ 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A juvenile court's decision regarding a child's best interest in a legal custody proceeding is not unreasonable if it is supported by competent, credible evidence. *In re A.W.*, 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 10 (Citation omitted).

**{¶28}** Upon our review of the entire record in these matters, we find the trial court did not abuse its discretion in granting legal custody of Child 1 and Child 2 to Grandmother as such was based upon the Children's best interest. As the trial court found in its July 28, 2021 Judgment Entry Approving Magistrate's Decision and Order, Mother failed to sufficiently remedy the original circumstances which caused the removal of the Children from her home. A more detailed analysis is provided infra. The Children had been living with Grandmother prior to RCCS filing the complaints on July 19, 2019, due to Mother's incarceration in April, 2019. Grandmother provides the Children with structure, stability, and love. Child 1 has ADD and has an IEP at school. Child 1 also receives occupational therapy on a weekly basis. Grandmother advocates for Child 1 and ensures Child 1 receives the appropriate services. The Children are doing well in Grandmother's care and are bonded with Grandmother. The Children also have a good relationship with their Mother. Grandmother encourages the Children's relationship with Mother. Grandmother understands she is responsible for the Children until they reached the age of majority and is responsible for them in every way a parent would be responsible.

**{¶29}** Based upon the foregoing, Mother's second assignment of error in Richland App. No. 2021-CA-86 and third assignment of error in Richland App. No. 2021-CA-87 are overruled.

Richland App. No. 2021-CA-86

I

Richland App. No. 2021-CA-87

I

**{¶30}** In her first assignments of error in both appeals, Mother contends the trial court erred in finding she failed to make sufficient progress on her case plan. Mother specifically argues the trial court abused its discretion in finding she failed to remedy the issues which caused the Children to be removed. We find the record belies Mother's assertion.

**{¶31}** Mother's case plan required her to engage in substance abuse treatment, to participate in mental health services, and to be able provide for the Children's basic needs. The following evidence was adduced at the July 24, 2021 hearing:

**{¶32}** Mother had completed a substance abuse treatment program approximately one month prior to the hearing. However, approximately two weeks after completing the program, Mother was incarcerated on charges of intoxication and assault. Mother expected to be sent to a residential treatment facility for up to 30 days following her release from jail on bond. At the time of her recent incarceration, Mother was on probation as the result of a domestic violence conviction in June, 2020, involving Father and occurring in front of the Children. Mother was intoxicated when she committed this offense. Mother had several minor infractions of the terms of her probation including for failing to attend treatment. Mother was resistant to mental health counseling and had only recently done so through teletherapy. Mother had consistent housing and employment, but continued to struggle financially.

**{¶33}** Assuming, arguendo, the trial court erred in finding Mother failed to make sufficient progress on her case plan, such would not affect our finding, supra, the trial court did not abuse its discretion in awarding legal custody of the Children to Grandmother. As noted, supra, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. A parent's case plan compliance may be relevant to the child's best interest, however, it is not determinative. See, e.g., *In re L.P.*, 9th Dist. Summit No. 29963, 2021-Ohio-3183, ¶ 25; *In re S.S.*, 9th Dist. Summit Nos. 29511 and 29514, 2020-Ohio-1354, ¶ 15. Thus, a parent's case plan compliance will not preclude a trial court from awarding legal custody to a non-parent when doing so is in the child's best interest. See, generally, *In re J.M.*, 4th Dist. Highland Nos. 21CA13 thru 21CA16, 2021-Ohio-4146, ¶ 58.

**{¶34}** Based upon the foregoing, Mother's first assignments of error are overruled.

Richland App. No. 2021-CA-87

II

**{¶35}** In her second assignment of error in Richland App. No. 2021-CA-87, Mother asserts RCCS failed to make reasonable efforts to reunite her with the Children.

**{¶36}** Juv.R. 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶37}** Mother failed to object, in her August 10, 2021 objections and her October 12, 2021 supplemental objections, to the trial court's finding RCCS made reasonable efforts to reunite her with the Children. As a result of her failure to object to the reasonable efforts finding, Mother has waived all but plain error. "[T]he plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *In the Matter of A.J.S. and R.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 16, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

**{¶38}** The Ohio Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3, 2001 Ohio App. LEXIS 4809 (Oct. 30, 2001). To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id.*

**{¶39}** " 'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.' " *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and Wyandot Nos. 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In determining whether the agency made

reasonable efforts [pursuant to R.C. 2151.419(A)(1)] to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re Lewis*, 4th Dist. No. 03CA12, 2003-Ohio-5262, at ¶ 16. " 'Reasonable efforts' does not mean all available efforts." *Id.* A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist. 1992).

**{¶40}** As set forth in our Statement of the Case and Facts, supra, RCCS made reasonable efforts to reunite Mother with the Children by establishing a workable case plan which included services to address concerns with Mother's substance abuse and mental health.  Mother completed a substance abuse treatment program shortly before the final hearing.   Two weeks after completing the program, Mother became intoxicated and was ultimately arrested.  Mother was in jail at the time of the hearing.  Mother was resistant to mental health treatment throughout the pendency of the matter.  The matter was pending before the trial court for two years, yet Mother refused to avail herself of services which would assist her in making appropriate parenting decisions and general life decisions.

**{¶41}** Based upon the entire record in this matter, we find no plain error in the trial court's conclusion RCCS made reasonable efforts to reunite Mother with the Children.

**{¶42}** Mother's second assignment of error in Richland App. No. 2021-CA-87 is overruled.

{¶43} The judgments of the Richland County Court of Common Pleas, Juvenile Division, are affirmed.


By: Hoffman, J.

Wise, Earle, P.J.  and

Gwin, J. concur